AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/Drew E. Davis 1/27/2026

1/27/26 ALM

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED JAN 27 2026 JOAN KANE, CLERK U.S. DIST. COURT, WESTERN DIST. OKLA. BY LDC, DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A BLACK APPLE IPHONE CURRENTLY LOCATED AT THE HOMELAND SECURITY INVESTIGATIONS OKLAHOMA CITY OFFICE, 3625 NW 56th STREET, OKLAHOMA CITY, OKLAHOMA

Case No. M-26-43-ALM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(i), (v)(I) | Conspiracy to bring in an alien to the United States at a place other than a designated port of entry, or place other than as designated by the Commissioner |

The application is based on these facts:
See attached Affidavit of HSI Special Agent, Andrew Lee

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:(__________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Andrew Lee, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/26

City and state: Oklahoma City, Oklahoma

[signature]
*Judge's signature*

Amanda L. Maxfield, United States Magistrate Judge
*Printed name and title*

FILED
JAN 27 2026
JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY LDC, DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

**IN THE MATTER OF THE SEARCH OF A BLACK APPLE IPHONE CURRENTLY LOCATED AT THE HOMELAND SECURITY INVESTIGATIONS OKLAHOMA CITY OFFICE, 3625 NW 56th STREET, OKLAHOMA CITY, OKLAHOMA.**

**Case No.** M-26-43-ALM

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, **Andrew Lee,** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—described in **Attachment A** which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in **Attachment B**.

2. I am a Special Agent with Homeland Security Investigations (HSI) and have been since June 2019. I am currently assigned to the HSI Oklahoma City Office, where I have been involved in a wide variety of investigative matters including investigations targeting transnational criminal organizations, many of which are involved in the smuggling of persons in violation of 8 U.S.C. § 1324, and illegal re-entry of persons in violation of 8 U.S.C. § 1326. As part of my investigative experience as a special agent, I have executed search and arrest warrants, conducted physical surveillance, analyzed records documenting the smuggling of persons, and spoken with informants and subjects, as well as other local, state, and federal law enforcement officers, regarding the manner in which criminal organizations obtain, finance, store, manufacture, transport, and distribute their illicit goods.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Black Apple iPhone with three cameras and a multicolored case, hereinafter the "**DEVICE.**" The **DEVICE** is currently located at the HSI Oklahoma City Office, 3625 NW 56th Street, Suite 300, Oklahoma City, OK 73112, within the Western District of Oklahoma.

5. The applied-for warrant would authorize the forensic examination of the **DEVICE** for the purpose of identifying electronically stored data particularly described in **Attachment B.**

## PROBABLE CAUSE

1. On October 10, 2014, Jesus DURON-Gutierrez (a/k/a Juan ROQUE), a citizen of Mexico, was issued an initial order of removal by an Immigration Judge.

2. On June 9, 2025, Immigration and Customs Enforcement (ICE) and Enforcement Removal Operations (ERO) officers encountered DURON during an immigration enforcement vehicle stop in Oklahoma City, Oklahoma, after observing him exit a residence. According to ERO reports, DURON was subsequently taken into custody and processed for removal proceedings because he had an active removal order from an Immigration Judge.

3. On August 28, 2025, DURON was removed from the United States by ICE ERO via the Del Rio, Texas, International Bridge.

4. On September 19, 2025, United States Border Patrol Agents were notified that a red Jeep loaded with several undocumented individuals was in the area of Roma, Texas. When

Border Patrol agents located the suspected vehicle, five (5) subjects quickly absconded from the vehicle and were apprehended shortly thereafter—DURON was one of those five individuals.

5. During a search incident to arrest, an Apple iPhone (hereinafter the **DEVICE**) as described in **Attachment A**, was located on DURON's person and seized by Border Patrol Agents. The **DEVICE** was then taken into custody and secured at the Rio Grande City, Texas, Border Patrol Station.

6. On November 5, 2025, agents requested that the **DEVICE** be transferred to HSI Oklahoma City custody. The **DEVICE** was received at the HSI Oklahoma City Office on December 1, 2025.

7. Through prior investigations involving DURON, investigators know he has used an alias with a fictitious passport under the name Juan Pablo DURON-Roque. Also from prior investigations, DURON is known to have multiple ties to Oklahoma, including numerous properties, businesses, and family. Additionally, DURON's romantic partner, C.U., resides in Oklahoma City.

8. On December 31, 2025, agents searched the Oklahoma County Assessor website and found 11 properties in Oklahoma County associated with C.U. and C.U.'s construction company. Through prior investigations, investigators know C.U. and DURON to own and operate C.U.'s construction company.

9. On the same date, agents searched law enforcement databases and found that DURON had provided 624 SE 38th Street, Oklahoma City, Oklahoma, as a home address to Immigration Officers during his process for reinstating his removal order. The vehicle DURON was stopped in during his most recent encounter in Oklahoma on June 9, 2025, was registered to C.U. at 624 SE 38th Street, Oklahoma City, Oklahoma.

10. On January 6, 2026, agents searched law enforcement databases and confirmed that DURON was an alien at the time he was located near Roma, Texas, on September 19, 2025, and that he had not obtained permission from the Attorney General to reapply for admission to the United States.

11. On the same date, agents searched law enforcement databases to confirm any documented immigration encounters with DURON and found the following additional encounters with immigration:

a. On May 17, 2005, DURON was encountered by ERO at the Oklahoma County Jail and was granted a voluntary return to Mexico.

b. On November 3, 2008, DURON was encountered on the Muskogee Turnpike by ICE Special Agents and was taken to the Tulsa County Jail and granted a voluntary return to Mexico.

c. Additionally, during his 2014 encounter, DURON provided the address 3806 N Ann Arbor, Apt #2, Oklahoma City, Oklahoma, as his home address.

d. During his encounter in June 2025, DURON provided the address of 624 SE 38th Street, Oklahoma City, Oklahoma, as his home address to immigration officers.

12. DURON was removed from the United States on January 7, 2025, via the Harlingen, Texas, Port of Entry/International Bridge after being sentenced to time served stemming from a conviction in the Southern District of Texas for a violation of 8 U.S.C. § 1326, reentry of a removed alien.

13. Given that DURON returned to the United States on September 19, 2025, only 22 days after being removed, and based on his encounters with immigration officials in Oklahoma dating back to 2005, it is believed that DURON was almost certainly attempting to return to the Oklahoma City area in September 2025 where he maintained numerous properties, businesses, family, and a romantic/business partner.

14. Based on my training and experience, I know that subjects who illegally re-enter the United States are often smuggled to avoid detection by law enforcement from their place of entry into the United States to their intended destination within the United States. Those who are being smuggled often carry cellphones and use them to plan and coordinate travel and payment with co-conspirators who are already based in the United States so that the smugglers are paid for their services. I also know that those who are being smuggled often submit payment and receive instruction for being smuggled into the United States via the cellular devices they carry. Therefore, there is reasonable cause to believe that the **DEVICE** contains such conversations between DURON, co-conspirators, and human smugglers involving a human smuggling operation with a planned destination of Oklahoma where DURON has multiple interests and has resided for years.

15. The **DEVICE** is currently stored at the HSI Oklahoma City Office at 3625 NW 56th Street, Suite 300, Oklahoma City, Oklahoma, within the Western District of Oklahoma. In my training and experience, I know that the **DEVICE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **DEVICE** first came into the possession of HSI.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text

messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: a digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: a portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: a GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: a personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include

various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: a tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: a pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: an Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: the Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/iphone/?afid=p240%7Cgo~cmp-14648718653~adg-126654828629~ad-775231686945_kwd-2258410302~dev-c~ext~prd~mca~nt-search&cid=wwa-us-kwgo-iphone-noncore_iphonefamily-iphonefamily-iphone_hero_buy_092225-iPhone-iPhone-apple+iphonex, I know that the **DEVICE** has capabilities that allow it to serve as a wireless telephone, digital

camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the **DEVICE**.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on devices. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime described on the warrant, but also forensic evidence that establishes how the **DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **DEVICE** because:

a. data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file);

b. forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence;

c. a person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when;

d. the process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant; and

e. further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause to believe that a violation of 8 U.S.C. § 1324(a)(1)(A)(i), (v)(I), conspiracy to bring in an alien to the United States at a place other than a designated port of entry, or place other than as designated by the Commissioner, has occurred, and that evidence, fruits, and instrumentalities of this offense are located on the **DEVICE**. Therefore, I respectfully request that this Court issue a search warrant authorizing the examination of the **DEVICE** described in **Attachment A** to seek the items described in **Attachment B.**

Respectfully submitted,

ANDREW LEE
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on January 27th, 2026:

AMANDA L. MAXFIELD
United States Magistrate Judge

# ATTACHMENT A

The property to be searched is a black Apple iPhone with 3 cameras and a multicolored case, hereinafter referred to as the "**DEVICE.**" The **DEVICE** is currently located within the Western District of Oklahoma at:

HSI Oklahoma City Office,
3625 NW 56th Street, Suite 300
Oklahoma City, Oklahoma.

This warrant authorizes the forensic examination of the **DEVICE** for the purpose of identifying the electronically stored information described in **Attachment B**.





# ATTACHMENT B

1. All records on the **DEVICE** described in **Attachment A** that relate to a conspiracy to bring in an alien to the United States at a place other than a designated port of entry, or place other than as designated by the Commissioner, in violation of 8 U.S.C. § 1324(a)(1)(A)(i), (v)(I), and involve Jesus DURON-Gutierrez, a/k/a Juan ROQUE (DURON) since **June 9, 2025**, including:

a. types, methods, and communications regarding human smuggling events as well as dates, places, and amounts of specific transactions involving DURON or others;

b. any information related to how the human smuggling was arranged, financed, planned, and performed, including names, addresses, phone numbers, or any other identifying information, of individuals and organizations involved in arranging, financing, planning, and performing human smuggling;

c. any information recording DURON's schedule or travel from **June 9, 2025**, to the present;

d. all bank records, checks, credit card bills, account information, and other financial records;

e. records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from the **DEVICE** and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

f. records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device;

g. audio recordings, pictures, video recordings or still captured images on phone memory cards, or other storage related to human smuggling contained in the **DEVICE**; and

h. global positioning system ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations.

2. Evidence of user attribution showing who used or owned the **DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.